IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Gun Owners of America, Inc.,      :
Gun Owners Foundation,      :
David Cotugno, Ross Gilson,      :
Vern Lei and Michael Strollo,      :
               Appellants      :
     :
          v.      :   No. 1069 C.D. 2022
     :
City of Philadelphia      :   Argued: November 8, 2023

BEFORE:   HONORABLE RENÉE COHN JUBELIRER, President Judge
           HONORABLE PATRICIA A. McCULLOUGH, Judge
           HONORABLE ANNE E. COVEY, Judge
           HONORABLE MICHAEL H. WOJCIK, Judge
           HONORABLE CHRISTINE FIZZANO CANNON, Judge
           HONORABLE ELLEN CEISLER, Judge
           HONORABLE LORI A. DUMAS, Judge

OPINION
BY JUDGE CEISLER                   FILED: February 16, 2024

Appellants Gun Owners of America, Inc., Gun Owners Foundation, David Cotugno, Ross Gilson, Vern Lei and Michael Strollo (collectively Gun Owners) appeal from the Court of Common Pleas of Philadelphia County's (Common Pleas) September 12, 2022 order. Through that order, Common Pleas denied Gun Owners' request to permanently enjoin Appellee City of Philadelphia (City) from enforcing an ordinance that prohibits the possession, use, transfer, or manufacture of raw materials or component parts into what are colloquially known as "ghost guns" within the City. We affirm.[1]

---

[1] The *en banc* panel of judges that heard this case voted 4 to 3 in favor of affirming Common Pleas' order. However, in keeping with this Court's internal operating procedures, all commissioned judges voted on this opinion (including those who were not on the panel), save for one judge who recused herself. This resulted in the voting judges being evenly split regarding the

**(Footnote continued on next page…)**

# I. Background

On January 27, 2021, the City enacted Bill No. 200593 (Ordinance), thereby amending the Philadelphia Code (Code) to include the following prohibitions:

> (1)  No person, unless licensed to manufacture firearms under federal law, shall:
>
>> (a) use a three-dimensional printer to create any firearm, or any piece or part thereof or attachment thereto;
>>
>> (b) use any additive manufacturing process in order to produce a firearm; or
>>
>> (c) convert an unfinished frame or receiver into a finished firearm.
>
> (2)  No person shall sell or otherwise transfer a firearm finishing device or an unfinished frame or receiver unless the transferor and transferee are both federal firearms licensees.
>
> (3)  No person shall purchase or otherwise accept transfer of a firearm finishing device or an unfinished frame or receiver unless the transferor and transferee are both federal firearms licensees.

Code § 10-2002.[2] The Ordinance contains specific definitions for terms used therein, including "additive manufacturing"; "federal firearms licensee"; "finished frame or

---

proper disposition of this matter; accordingly, this opinion is being filed "as circulated," pursuant to Section 256(b) of this Court's internal operating procedures, 210 Pa. Code §69.256(b).

[2] Per Section 10-2001 of the Code, "additive manufacturing" is "[a] manufacturing process in which material is laid down in succession in order to produce the product, including but not limited to three-dimensional printing"; "finished frame or receiver" is "[a]ny frame or receiver that does not require additional milling or other modification to be capable of expelling a projectile when combined with additional components such as a barrel"; "firearm" is "[a]ny item classified as a firearm as defined in 18 Pa. C.S. § 6120(b)"; "firearm finishing device" is "[a]ny device, such as a firearm finishing mill or jig, which has as its primary purpose to aid the conversion of an unfinished frame or receiver into a finished frame or receiver"; "federal firearms licensee" is "[a] person who is licensed by the Bureau of Alcohol, Tobacco, Firearms and Explosives to engage in the business of manufacturing, importing or dealing of firearms"; and "unfinished frame or **(Footnote continued on next page…)**

2

receiver"; "firearm"; "firearm finishing device"; and "unfinished frame or receiver," and sets forth both civil and criminal penalties for violations of its restrictions. *Id.* §§ 10-2001, 10-2003-2004

On May 10, 2021, Gun Owners filed a lawsuit against the City in Common Pleas, through which they asked for a declaratory judgment that the Ordinance was preempted by Section 6120(a) of the Uniform Firearms Act (UFA);[3] facially violated Article I, Section 21 of the Pennsylvania Constitution;[4] and was unconstitutionally vague. Gun Owners also sought to have the Ordinance enjoined on a preliminary and permanent basis. Reproduced Record (R.R.) at 40-49.[5] The City then unsuccessfully attempted to remove the suit to federal court, after which Common Pleas issued a preliminary injunction with the parties' consent on January 3, 2022. *Id.* at 60-63, 76, 142. After a period of briefing and limited discovery, Common Pleas then held a hearing regarding Gun Owners' claims on August 19, 2022.

---

receiver" is "[a] piece of any material that does not constitute a firearm, but that has been shaped or formed in any way for the purpose of becoming the frame or receiver of a firearm." Code § 10-2001(2)-(5), (8)-(9).

[3] "No county, municipality or township may in any manner regulate the lawful ownership, possession, transfer or transportation of firearms, ammunition or ammunition components when carried or transported for purposes not prohibited by the laws of this Commonwealth." 18 Pa. C.S. § 6120(a).

[4] "The right of the citizens to bear arms in defence of themselves and the State shall not be questioned." PA. CONST. art. I, § 21.

[5] Gun Owners have failed to comply with the Pennsylvania Rules of Appellate Procedure's technical requirements regarding how a reproduced record's pages must be numbered. *See* Pa. R.A.P. 2173 ("[T]he pages of . . . the reproduced record . . . shall be numbered separately in Arabic figures[,] . . . thus 1, 2, 3, etc., followed . . . by a small a, thus 1a, 2a, 3a, etc."). For simplicity's sake, however, we will nevertheless cite to the Reproduced Record by using the page designations provided by Gun Owners.

Thereafter, on September 12, 2022, Common Pleas denied Gun Owners' request for a permanent injunction. *Id.* at 577. In the accompanying opinion, Common Pleas explained that there were three reasons for this outcome. First, though the Pennsylvania Supreme Court in *Ortiz v. Commonwealth*, 681 A.2d 152 (Pa. 1996) had concluded that Section 6120(a) preempts local regulation of the ownership, possession, transfer, or transportation of firearms, it has never expressly or implicitly ruled that this statute preempts the *entire field* of firearms regulation. Common Pleas Op., 9/12/22, at 3-4. Second, in Common Pleas' view, the Ordinance was not preempted by Section 6120(a) because "nothing in the UFA . . . explicitly or implicitly extends to [local] regulation of the components or parts of what may ultimately be used to complete a firearm." *Id.* at 4. Finally, because Gun Owners' Article I, Section 21-based argument "generally track[ed its] preemption argument," its constitutional claim was also without merit. *Id.* at 5 n.2. As for Gun Owners' vagueness argument, Common Pleas flatly declared that it had been "skeptical" of this claim, but declined "to address [its] merits" in the opinion and instead stated that its "view on the issue can be summarized by the statements made at oral argument." *See* Common Pleas Op., 9/12/22, at 5 n.2.[6]

This appeal by Gun Owners to our Court followed shortly thereafter.

---

[6] Common Pleas reiterated these explanations in expanded form in the 1925(a) opinion it subsequently issued on February 13, 2023. *See* Common Pleas Op., 2/13/23, at 2-7. In addition, Common Pleas elected to address therein the substance of Gun Owner's vagueness claim, stating that it was without merit because the concept of vagueness was inapplicable to the instant dispute, as well as because the Ordinance "provides reasonable standards and definitions to guide prospective conduct." *Id.* at 8-10. Gun Owners have chosen not to challenge Common Pleas' ruling on this claim and, thus, we need not deal with Common Pleas' disposition thereof.

## II. Discussion

Before we address the substance of this appeal, we must first resolve the City's assertion that the appeal must be quashed, due to Gun Owners' failure to file post-trial motions. Per Pennsylvania Rule of Civil Procedure 227.1(c):

> Post-trial motions shall be filed within ten days after
>
> > (1) verdict, discharge of the jury because of inability to agree, or nonsuit in the case of a jury trial; or
> >
> > (2) notice of nonsuit or the filing of the decision in the case of a trial without jury.

Pa. R.Civ.P. 227.1(c).

> Under Rule 227.1, a party must file post-trial motions at the conclusion of a trial in *any* type of action in order to preserve claims that the party wishes to raise on appeal. In other words, a trial court's order at the conclusion of a trial, whether the action is one at law or in equity, simply cannot become final for purposes of filing an appeal until the court decides any timely post-trial motions.

*Chalkey v. Roush*, 805 A.2d 491, 496 (Pa. 2002) (citing Pa. R.Civ.P. 227.1(a)) (emphasis in original). "The requirement to file post-trial motions postpones the finality of a case-ending decision or order that otherwise would qualify as a final order triggering a right to appeal under the final order rule embodied in [Pennsylvania] Rule of Appellate Procedure 341(a)." *Wolk v. Sch. Dist. of Lower Merion*, 197 A.3d 730, 734-35 (Pa. 2018). "Under Rule 227.1, a party must file post-trial motions at the conclusion of a trial in any type of action in order to preserve claims that the party wishes to raise on appeal. *Goshen Valley III Condo. Ass'n v. Messick*, 299 A.3d 1064, 1068 (Pa. Cmwlth. 2023). In determining whether a party was required to file a post-trial motion in a non-jury matter, a court must focus "on the stage of the proceedings rather than whether a trial-like proceeding may have been conducted. In this regard, it is essential, as concerns a non-jury trial, that 'the

5

decision' has been issued. Where 'the decision' in the case has not yet issued, Rule 227.1 is not implicated." *Id.* at 739-40 (internal citation and footnote omitted); *see* Pa. R.Civ.P. 1038(b) (a "decision" in a non-jury trial is one that "dispose[s] of all claims for relief").

However, this requirement does not apply where an appeal emanates from an interlocutory order that is appealable as of right. "If an order falls under [Pennsylvania Rule of Appellate Procedure] 311, [which pertains to such interlocutory orders,] an immediate appeal may be taken as of right simply by filing a notice of appeal." Pa. R.A.P. 311, Note; *see Wolk*, 197 A.3d at 739 n.12 (quoting *Nevyas v. Morgan*, 921 A.2d 8, 13 (Pa. Super. 2007)) ("[I]t is improper to file a motion for post-trial relief when appealing pursuant to Rule 311.)"; WEST'S PENNSYLVANIA PRACTICE, APPELLATE PRACTICE § 302:17 (2007 ed.) ("Such orders [that fall within the scope of Pennsylvania Rule of Appellate Procedure 311] are appealable when entered, and neither post-trial motions nor exceptions are required or permitted."). Per Pennsylvania Rule of Appellate Procedure 311(a)(4), a party may appeal as of right from,

> [a]n order that grants or denies, modifies or refuses to modify, continues or refuses to continue, or dissolves or refuses to dissolve an injunction unless the order was entered:
>
> > . . . .
>
> > (ii) After a trial but before entry of the final order. Such order is immediately appealable, however, if the order enjoins conduct previously permitted or mandated or permits or mandates conduct not previously mandated or permitted, and is effective before entry of the final order.

Pa. R.A.P. 311(a)(4).

The order issued by Common Pleas on September 12, 2022, clearly falls within this exception, as it denied Gun Owners' request for a permanent injunction and resulted in the dissolution of Common Pleas' previously issued preliminary injunction. Assuming *arguendo* that the August 19, 2022 hearing produced a "decision," Common Pleas' September 12, 2022 order was immediately appealable because it allowed the City to once again enforce the Ordinance, thus "permit[ing] or mandat[ing] . . . conduct not previously mandated or permitted," and went into "effect[] before entry of the final order." *Id.* Accordingly, Gun Owners did not need to file a timely post-trial motion with Common Pleas in order to preserve its ability to appeal this order. The instant appeal is therefore procedurally proper and we decline to quash it.

Turning to the substance of Gun Owners' appeal, they present the following arguments that we summarize as follows. First, Common Pleas erred by concluding that Section 6120(a) of the UFA does not preempt the entire field of firearms regulation. In doing so, Common Pleas ignored binding case law from this Court, the thrust of the Pennsylvania Supreme Court's case law in this area, and the evidentiary record created in this matter. Gun Owners' Br. at 12-18. Second, even in the absence of field preemption, Common Pleas erred by concluding that Section 6120(a) does not preempt the Ordinance. At its core, Gun Owners assert that the Ordinance largely bans private manufacturing of firearms within the City; thus, the Ordinance is preempted by Section 6120(a) due to its conflict with that statute, as the Ordinance necessarily affects the ability to own, possess, transfer, or transport firearms. *Id.* at 18-23. Third, Common Pleas erred by concluding that the Ordinance does not facially violate Article I, Section 21 of the Pennsylvania Constitution. According to Gun Owners, this constitutional provision should be read to protect the

7

right to possess firearms components and to manufacture firearms, as both are critical to ensuring the right to bear arms. In addition, Article I, Section 21 must be construed as being at least as protective as the Second Amendment,[7] its federal analogue, and this Court should adopt the historical analysis framework created by the United States Supreme Court in *New York State Rifle & Pistol Association v. Bruen*, 142 S. Ct. 2111 (2022), to determine whether a firearm restriction passes constitutional muster. The Ordinance is facially unconstitutional, because there is no evidence that the private manufacture of firearms was similarly restricted when Pennsylvania adopted the Declaration of Rights in 1776 or when Article IX, Section 21 (Article I, Section 21's predecessor) was enacted as part of our Commonwealth's Constitution in 1790. *Id.* at 23-33. Finally, the Ordinance imposes a burden upon those who wish to privately manufacture firearms that is impossible to satisfy. Individuals who are not in the business of for-profit firearms manufacturing cannot obtain the federal firearms license that would allow them to conduct the conversion and manufacturing activities that are otherwise barred by the Ordinance. As such, the Ordinance imposes a *de facto* ban upon such individuals making firearms for their own use. *Id.* at 33-34.[8]

---

[7] "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. CONST. amend. II.

[8] "To justify the award of a permanent injunction, the party seeking relief must establish (1) that his right to relief is clear; (2) that an injunction is necessary to avoid an injury that cannot be compensated by damages; and (3) that greater injury will result from refusing rather than granting the relief requested." *Kuznik v. Westmoreland Cnty. Bd. of Comm'rs*, 902 A.2d 476, 489 (Pa. 2006). "However, unlike a claim for a preliminary injunction, the party need not establish either irreparable harm or immediate relief and a court may issue a final injunction if such relief is necessary to

**(Footnote continued on next page…)**

8

Gun Owners' first two arguments center upon the question of whether the Ordinance is preempted by Section 6120(a) of the UFA and, as such, we elect to address them in tandem. The City is a home rule municipality and is consequently vested with the power to "legislate concerning municipal governance without express statutory warrant for each new ordinance; rather, its ability to exercise municipal functions is limited only by its home rule charter, the Pennsylvania Constitution, and the General Assembly." *City of Philadelphia v. Schweiker*, 858 A.2d 75, 84 (Pa. 2004).

> The [Home Rule Charter and Optional Plans Law] instructs that "[a]ll grants of municipal power to municipalities governed by a home rule charter under this subchapter, whether in the form of specific enumeration or general terms, shall be liberally construed in favor of the municipality." 53 Pa. C.S. § 2961. Accordingly, when we find ambiguity in the scope of municipal authority or the limitations imposed thereon, we must resolve that ambiguity in the municipality's favor.

*Pa. Rest. & Lodging Ass'n v. City of Pittsburgh*, 211 A.3d 810, 817 (Pa. 2019); *accord Nutter v. Dougherty*, 938 A.2d 401, 414 (Pa. 2007) ("We cannot stress enough that a home rule municipality's exercise of its local authority is not lightly intruded upon, with ambiguities regarding such authority resolved in favor of the municipality.").

> Notwithstanding the legislature[']s and [the courts'] concomitant care to protect the authority of home rule

---

prevent a legal wrong for which there is no adequate redress at law." *Buffalo Twp. v. Jones*, 813 A.2d 659, 663-64 (Pa. 2003). "Additionally, when reviewing the grant or denial of a final or permanent injunction, an appellate court's review is limited to determining whether the trial court committed an error of law," *id.*, and, as such, "our standard of review is *de novo*, and our scope of review is plenary." *Kuznik*, 902 A.2d at 489.

*City of Philadelphia v. Armstrong*, 271 A.3d 555, 560-61 (Pa. Cmwlth. 2022) (cleaned up).

9

municipalities, fundamental principles of preemption also apply to the court[']s consideration of whether a given municipal exercise of power is in fact limited by an act of the General Assembly. Preemption [can come in any of] three forms . . . : express, conflict, and field preemption.

*Nutter*, 938 A.2d at 411.

The first type of preemption, express, exists "where a statute specifically declares it has planted the flag of preemption in a field[.]" *Dep't of Licenses & Inspections, Bd. of License & Inspection Rev. v. Weber*, 147 A.2d 326, 327 (Pa. 1959). The second type of preemption, conflict, "acts to preempt any local law that contradicts or contravenes state law[,]" in spite of the absence of any statutory language that explicitly preempts municipal regulation on the same or similar subject. *Nutter*, 938 A.2d at 404. "For conflict preemption to be applicable, [however,] the conflict between the statute and the ordinance must be irreconcilable." *Holt's Cigar Co. v. City of Philadelphia*, 10 A.3d 902, 907 (Pa. 2011). The third kind of preemption, field, occurs when "[a] statute is silent on supersession, but proclaims a course of regulation and control which brooks no municipal intervention[.]" *Weber*, 147 A.2d at 327. In instances where a statute occupies a field of regulation,

all ordinances touching the topic of exclusive control fade away into the limbo of 'innocuous desuetude.' However, where [that statute] is silent as to monopolistic domination and a municipal ordinance provides for a localized procedure which furthers the [statute's] salutary scope . . . the ordinance is welcomed as an ally, bringing reinforcements into the field of attainment of the statute's objectives.

*Id.* "The state is not presumed to have preempted a field merely by legislating in it. [Rather, t]he General Assembly must clearly show its intent to preempt a field in

10

which it has legislated." *Council of Middletown Twp., Delaware Cnty. v. Benham*, 523 A.2d 311, 314 (Pa. 1987).[9]

Furthermore, courts should exercise restraint when determining whether a local ordinance conflicts with state law, or whether the General Assembly has elected to occupy a regulatory field. As our Commonwealth's Supreme Court has counseled, "absent a clear statement of legislative intent to preempt, state legislation will not generally preempt local legislation on the same issue." *Mars Emergency Med. Svcs., Inc. v. Twp. of Adams*, 740 A.2d 193, 196 (Pa. 1999). "Such clarity is mandated because of the severity of the consequences of a determination of preemption[.]" *Hoffman Min. Co.*, 32 A.3d at 593.

Returning to the matter-at-hand, we disagree with Common Pleas' assertion that Section 6120(a) of the UFA does not preempt the field of firearms regulation. As mentioned *supra*, this statute contains the following prohibitory language: "No county, municipality or township may in any manner regulate the lawful ownership, possession, transfer or transportation of firearms, ammunition or ammunition components when carried or transported for purposes not prohibited by the laws of this Commonwealth." 18 Pa. C.S. § 6120(a). In *Ortiz*, the Pennsylvania Supreme Court interpreted this provision as depriving municipalities of "the power to regulate the ownership, possession, transfer or possession of firearms," declaring that "regulation of firearms is a matter of concern in all of Pennsylvania, . . . and the General Assembly . . . is the proper forum for the imposition of such regulation." 681 A.2d at 156. Since then, this Court has consistently interpreted *Ortiz* as standing

---

[9] Thus far, "[the Supreme] Court has determined that the General Assembly has evidenced a clear intent to totally preempt local regulation in only three areas: alcoholic beverages, anthracite strip mining, and banking." *Hoffman Min. Co. v. Zoning Hearing Bd. of Adams Twp., Cambria Cnty.*, 32 A.3d 587, 609-10 (Pa. 2011).

11

for the proposition that Section 6120(a) prohibits *any and all* local regulation of firearms. *See Armstrong*, 271 A.3d at 561. "Ultimately, when distilled to its essence, the underlying conclusion to be extracted from these cases is that the regulation of firearms is an area where legislative activity is vested singularly and absolutely in the General Assembly of the Commonwealth." *Id.*; *accord Firearm Owners Against Crime v. City of Pittsburgh*, 276 A.3d 878, 890 (Pa. Cmwlth. 2022) ("[S]ection 6120(a) of the UFA contains a prolific, sweeping, and expansive force of preemption and the cases strongly suggest that an ordinance will be preempted so long as it touches upon or relates to the field of firearm regulation 'in any manner.'"); *Dillon v. City of Erie*, 83 A.3d 467, 473 (Pa. Cmwlth. 2014) ("Section 6120(a) preempts all [local] firearms regulation[.]"); *Clarke v. House of Representatives of Com.*, 957 A.2d 361, 364 (Pa. Cmwlth. 2008) ("[B]oth Section 6120 [of the Uniform Firearms Act] and binding precedent have made clear [that the regulation of firearms] is an area of statewide concern over which the General Assembly has assumed sole regulatory power."). Furthermore, the Pennsylvania Supreme Court has itself indicated that this reading of *Ortiz* is correct, recently stating that Section 6120 of the UFA reflects "the General Assembly's reservation of the exclusive prerogative to regulate firearms in this Commonwealth[.]" *Com. v. Hicks,* 208 A.3d 916, 926 n.6 (Pa. 2019). In sum, there can be no doubt that, as understood through extant case, this statute fully occupies the field of firearms regulation.[10]

Even so, it does not follow that *this* Ordinance is preempted. By its very terms, the Ordinance does not regulate firearms *per se*. The Ordinance provides that a

---

[10] *But see Firearm Owners Against Crime*, 276 A.3d at 901 (Ceisler, J., concurring in part and dissenting in part) ("I urge our Supreme Court to either overturn or rein in the reach of *Ortiz*[, because Section 6120(a), by its plain language,] preempt[s] local regulation of ownership, possession, transfer, and transportation of three classes of items, *i.e.*, firearms, ammunition, and ammunition components, but extend[s] no further than that.").

12

"firearm" is "[a]ny item classified as a firearm as defined in 18 Pa. C.S. § 6120(b)" Ordinance § 10-2001. Section 6120(b) of the UFA states: "Firearms . . . shall have the meaning given to it in [S]ection 5515 [of the UFA] (relating to prohibiting of paramilitary training) but shall not include air rifles as that term is defined in [S]ection 6304 [of the UFA] (relating to sale and use of air rifles)." 18 Pa. C.S. § 6120(b). In turn, Section 5515 of the UFA defines "firearm" as "[a]ny weapon which is designed to or may readily be converted to expel any projectile by the action of an explosive; or the frame or receiver of any such weapon." *Id.* § 5515. Instead of regulating such "firearms," however, the Ordinance merely prohibits the conversion of unfinished frames or receivers into firearms, as well as the use of certain manufacturing processes to create firearms from scratch, and bars the purchase, sale, or transfer of certain kinds of parts and machinery for purposes of those activities. *See* Ordinance §§ 10-2002-04. To state the obvious, **none** of those parts, machinery, or manufacturing processes constitute firearms under either the Ordinance or Section 6120. *See id.* § 10-2001 (providing definitions for, *inter alia*, "additive manufacturing"; "firearm"; "firearm finishing device"; and "unfinished frame or receiver"); 18 Pa. C.S. § 6120(b). In other words, the Ordinance's drafting enables it to escape the preemptive reach of the UFA, because it neither conflicts with Section 6120(a), nor touches upon the field of the General Assembly's exclusive regulatory authority regarding actual firearms. Accordingly, both of Gun Owners' preemption-based claims are without merit.

Moving on, Gun Owners have waived their argument that the Ordinance violates Article I, Section 21 of the Pennsylvania Constitution, due to their failure to adequately brief and analyze that issue. It is well settled "that, in interpreting a provision of the Pennsylvania Constitution, [our courts] are not bound by the

decisions of the United States Supreme Court which interpret similar (yet distinct) federal constitutional provisions." *Com. v. Edmunds*, 586 A.2d 887, 894 (Pa. 1991). "While minimum federal constitutional guarantees are equally applicable to the analogous state constitutional provision, the state has the power to provide broader standards than those mandated by the federal Constitution[.]" *Com. v. Sell*, 470 A.2d 457, 466-67 (Pa. 1983) (cleaned up). Consequently, in the event a litigant asserts a Pennsylvania Constitution-based claim, and the relied-upon constitutional provision is analogous to one contained in the federal Constitution, the litigant must provide what is known as an *Edmunds* analysis in support of that claim. *Jubelirer v. Rendell*, 953 A.2d 514, 523-24 (Pa. 2008).[11] At minimum, the following four factors must be considered in an *Edmunds* analysis:

> 1) text of the Pennsylvania constitutional provision;
>
> 2) history of the provision, including Pennsylvania case-law;
>
> 3) related case-law from other states;
>
> 4) policy considerations, including unique issues of state and local concern, and applicability within modern Pennsylvania jurisprudence.

*Edmunds*, 586 A.2d at 895.

> Depending upon the particular issue presented, an examination of related federal precedent may be useful as part of the state constitutional analysis, not as binding authority, but as one form of guidance. **However, it is essential that courts in Pennsylvania undertake an independent analysis under the Pennsylvania Constitution**.

*Id.* (emphasis added).

---

[11] A litigant is not strictly required to provide an *Edmunds* analysis when the at-issue portion of the Pennsylvania Constitution has no counterpart in the federal Constitution, but it may nevertheless be prudent for them to do so anyway. *See Jubelirer*, 953 A.2d at 524-25; *id.* at 525 n.12.

Despite this requirement, Gun Owners failed to embark upon a legally adequate analysis of Article I, Section 21. To the contrary, they offer nothing more than conclusory, self-serving interpretations of that provision, backed by largely cursory references to case law from other jurisdictions. *See* Gun Owners' Br. at 23-33.[12]

> [O]ur rules of appellate procedure are explicit that the argument contained within a brief must contain "such

---

[12] Gun Owners predicate a good bit of their argument regarding Article I, Section 21 upon *Bruen* and the Second Amendment analytical framework that the United States Supreme Court created in that case. *See* Gun Owners' Br. at 29-33. Assuming *arguendo* that Gun Owners had not waived their Article I, Section 21 claim, they would be estopped from relying upon Second Amendment jurisprudence in this instance, due to their conduct in federal court. Our Commonwealth's Supreme Court has explained that

> Judicial estoppel is an equitable, judicially-created doctrine designed to protect the integrity of the courts by preventing litigants from "playing fast and loose" with the judicial system by adopting whatever position suits the moment. *Gross v. City of Pittsburgh*, 686 A.2d 864, 867 (Pa. Cmwlth. 1996). Unlike collateral estoppel or *res judicata*, it does not depend on relationships between parties, but rather on the relationship of one party to one or more tribunals. In essence, the doctrine prohibits parties from switching legal positions to suit their own ends. *Id.*

*Sunbeam Corp. v. Liberty Mut. Ins. Co.*, 781 A.2d 1189, 1192 (Pa. 2001). As the City points out in its brief, Gun Owners expressly disclaimed any reliance upon the Second Amendment when seeking to defeat the City's efforts to remove this case to federal court, maintaining at that point in the litigation that this case did not even indirectly present a Second Amendment question, as well as that consideration of federal law was not necessary for judicial disposition of their suit. *See* City's Br. at 29-32; *see* R.R. at 82 (judicial opinion from United States District Court for the Eastern District of Pennsylvania ordering remand of this matter to Common Pleas, in which it is noted that "[Gun Owners] reiterate that they assert no claim under the Second Amendment or any federal law. They assert that references to federal law in the[ir] complaint merely provide context to their state statutory and constitutional claims, and do not raise federal questions requiring resolution by the federal court."); *see also id.* at 46 n.9 (Gun Owners stating in their complaint that they "seek[] relief solely on state law grounds" and reference Second Amendment case law only as "persuasive" authority). Because of this, Gun Owners cannot now pursue what is essentially a Second Amendment argument that is thinly, and unconvincingly, disguised as an Article I, Section 21 claim.

15

> discussion and citation of authorities as are deemed pertinent." Pa. R.A.P. 2119(a).
>
> "Where an appellate brief fails to provide any discussion of a claim with citation to relevant authority or fails to develop the issue in any other meaningful fashion capable of review, that claim is waived. It is not the obligation of an appellate court to formulate an appellant's arguments for him." *Com. v. Johnson*, 985 A.2d 915, 924 (Pa. 2009).

*Wirth v. Com.*, 95 A.3d 822, 837 (Pa. 2014) (cleaned up). Gun Owners' briefing regarding Article I, Section 21 falls far short of satisfying their obligation under *Edmunds*. As a consequence, they have waived their ability to use that constitutional argument as a basis to challenge the propriety of Common Pleas' order.

A similar fate must also befall Gun Owners' final argument, regarding the Ordinance's federal firearms license requirement. Gun Owners offer a single paragraph to support their claim on this point, one devoid of any references to law that would support their assertion that the impossibility of compliance is a valid basis for enjoining and invalidating an ordinance. *See* Gun Owners' Br. at 33-34. Therefore, Gun Owners have waived this argument as well. *Wirth*, 95 A.3d at 837.

### III. Conclusion

Accordingly, we affirm Common Pleas' September 12, 2022 order.

_____
ELLEN CEISLER, Judge

Judge Dumas concurs in the result only.
Judge Wallace did not participate in the decision of this case.

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Gun Owners of America, Inc., :
Gun Owners Foundation, :
David Cotugno, Ross Gilson, :
Vern Lei and Michael Strollo, :
    Appellants :
         :
   v.      : No. 1069 C.D. 2022
         :
City of Philadelphia  :

# **O R D E R**

AND NOW, this 16th day of February, 2024, it is hereby ORDERED that the Court of Common Pleas of Philadelphia County's September 12, 2022 order is AFFIRMED.

         _____
         ELLEN CEISLER, Judge

Gun Owners of America, Inc.,   :
Gun Owners Foundation,    :
David Cotugno, Ross Gilson,   :
Vern Lei and Michael Strollo,   :
        Appellants   :
               :
         v.        :   No. 1069 C.D. 2022
               :
City of Philadelphia     :   Argued: November 8, 2023

BEFORE:   HONORABLE RENÉE COHN JUBELIRER, President Judge
           HONORABLE PATRICIA A. McCULLOUGH, Judge
           HONORABLE ANNE E. COVEY, Judge
           HONORABLE MICHAEL H. WOJCIK, Judge
           HONORABLE CHRISTINE FIZZANO CANNON, Judge
           HONORABLE ELLEN CEISLER, Judge
           HONORABLE LORI A. DUMAS, Judge

CONCURRING/DISSENTING OPINION
BY JUDGE McCULLOUGH            FILED: February 16, 2024

Like Judge Fizzano Cannon in her thorough and articulate Concurring and Dissenting Opinion, which I join in full, I concur with the Majority's conclusions regarding the appealability of the order in question and the General Assembly's clear occupation of the entire field of firearms regulation in the Commonwealth. I also likewise dissent from the Majority's conclusion that the City of Philadelphia's (City) creative drafting of the ordinance at issue (Ordinance) shields it from the preemptive reach of the General Assembly's legislative prerogative in this area. I write separately to briefly emphasize the necessary implications of field preemption.

Where field preemption exists, "the state has retained all regulatory and legislative power for itself and no local legislation *in that area* is permitted."

*Hoffman Mining Company, Inc. v. Zoning Hearing Board of Adams Township*, *Cambria County*, 32 A.3d 587, 593 (Pa. 2011) (emphasis added). As we noted in *Firearm Owners Against Crime v. City of Pittsburgh*, 276 A.3d 878 (Pa. Cmwlth. 2022) (*en banc*), Section 6120(a) of the Pennsylvania Uniform Firearms Act of 1995[1] "contains a prolific, sweeping, and expansive force of preemption and the cases strongly suggest that an ordinance will be preempted so long as it touches upon or relates to the field of firearm regulation 'in any manner.'" *Id.* at 890 (quoting 18 Pa. C.S. § 6120(a)). We simply cannot, as the Majority has done, first conclude that the General Assembly occupies the entire field of firearms regulation and then ignore an Ordinance firmly planted in that field based on a hyper-technical analysis of its wording and definitions. The Ordinance plainly targets firearm possession and regulates firearm component parts that, *practically* speaking, could "readily be converted" into firearms. *See* 18 Pa. C.S. § 5515(a)(3)(ii). That is enough under the above standard to invalidate it.

In short, if a local ordinance, resolution, or executive order looks like a firearm regulation and walks like a firearm regulation, it *is* a firearm regulation and is preempted. No amount of artful drafting, fancy definitional footwork, or sleight of legislative hand will save it. To the extent that the Majority refuses to face these facts to save the Ordinance from its rightful fate, I respectfully dissent.

_____
PATRICIA A. McCULLOUGH, Judge

Judges Covey and Fizzano Cannon join in this Concurring and Dissenting Opinion.

_____

[1] 18 Pa. C.S. §§ 6101-6128.

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Gun Owners of America, Inc.,           :
Gun Owners Foundation,                 :
David Cotugno, Ross Gilson,            :
Vern Lei and Michael Strollo,          :
                        Appellants      :
                                        :
            v.                          :
                                        :   No. 1069 C.D. 2022
City of Philadelphia                   :   Argued: November 8, 2023


BEFORE:    HONORABLE RENÉE COHN JUBELIRER, President Judge
           HONORABLE PATRICIA A. McCULLOUGH, Judge
           HONORABLE ANNE E. COVEY, Judge
           HONORABLE MICHAEL H. WOJCIK, Judge
           HONORABLE CHRISTINE FIZZANO CANNON, Judge
           HONORABLE ELLEN CEISLER, Judge
           HONORABLE LORI A. DUMAS, Judge


CONCURRING/DISSENTING OPINION
BY JUDGE FIZZANO CANNON                      FILED: February 16, 2024


        I concur in the majority's conclusions that the order at issue is
appealable and that the General Assembly has fully occupied the field of firearms
regulation in Pennsylvania.  However, I disagree with the majority's conclusion that
the ordinance at issue is not preempted because it does not regulate firearms.
Further, I disagree with the majority's finding of waiver regarding the ordinance's
federal firearms licensing requirement and the constitutional issue raised by the
appellants, Gun Owners of America, Inc., Gun Owners Foundation, David Cotugno,
Ross Gilson, Vern Lei, and Michael Strollo (collectively, Gun Owners).  Regarding
these issues, therefore, I respectfully dissent.

## I. Components and the Definition of a "Firearm"

Section 6120(a) of the Pennsylvania Uniform Firearms Act of 1995 (UFA)[1] provides: "No county, municipality or township may in any manner regulate the lawful ownership, possession, transfer or transportation of firearms, ammunition or ammunition components when carried or transported for purposes not prohibited by the laws of this Commonwealth." 18 Pa.C.S. § 6120(a). The relevant ordinance of the City of Philadelphia (City) defines a "firearm" as "[a]ny item classified as a firearm as defined in [Section 6120(b) of the UFA,] 18 Pa.C.S. § 6120(b)." PHILA., PA., CODE § 10-2001 (2020). Section 6120(b) of the UFA, in turn, defines "firearms" by reference to the definition in Section 5515(a)(3)(ii) of the UFA, which defines a "firearm" as "[a]ny weapon which is designed to or may readily be converted to expel any projectile by the action of an explosive; or the frame or receiver of any such weapon." 18 Pa.C.S. § 5515(a)(3)(ii).

Through the ordinance, the City seeks to avoid the application of Section 6120(a) by regulating items it defines as not constituting firearms, such as an "[u]nfinished frame or receiver," which it defines as "[a] piece of any material that *does not constitute a firearm*, but that has been shaped or formed in any way for the purpose of becoming the frame or receiver of a firearm." PHILA., PA., CODE § 10-2001(4) (2020) (emphasis added). Gun Owners assert that the plain language of the UFA preempts regulations such as those at issue here. Gun Owners challenge the conclusions of the Court of Common Pleas of Philadelphia County (trial court) that the UFA preempts only legislation concerning completed firearms, that the ordinance relates to component parts that are not within the UFA's definitions of a firearm, and that only specific activities set forth in Section 6120(a) of the UFA are

_____

[1] 18 Pa.C.S. §§ 6101-6128.

preempted from local regulation, *i.e.*, "the lawful ownership, possession, transfer or transportation of firearms, ammunition or ammunition components when carried or transported for purposes not prohibited by the laws of this Commonwealth." 18 Pa.C.S. § 6120(a); *see also* Gun Owners' Br. at 18-19. Describing the trial court's reading of the UFA as "hyper-literal," Gun Owners posit that the right to possess firearms necessarily implies and includes the right to acquire and/or make firearms. Gun Owners' Br. at 19. Otherwise, they reason, a local ordinance could effectively ban firearms despite the UFA's preemption language by, for example, banning the loading of firearms with ammunition on the basis that regulation of "loading" ammunition is not expressly preempted by the UFA; or by banning other components such as triggers, grips, and barrels, and thereby precluding repair of firearms already legally owned. Gun Owners' Br. at 19. Further, Gun Owners charge that despite the City's claim that it is not trying to regulate the possession of firearms, its express purpose in enacting the ordinance was "to control the proliferation of '3D-printed and ghost guns [that] have been a growing concern in Philadelphia and across the nation.'" *Id.* at 21 (quoting the City's argument in opposition to a remand). Thus, Gun Owners contend that the ordinance violates the plain language of the UFA by banning "an entire category of firearms," *i.e.*, "privately made firearms made for personal use within Philadelphia by those not federally licensed . . . ." Gun Owners' Br. at 22.

Pennsylvania courts have not previously considered whether firearm components, which are not within the express statutory definition of a firearm, are nonetheless subject to field preemption. However, this Court has rejected attempts at local regulation in analogous circumstances.

*Clarke v. House of Representatives*, 957 A.2d 361 (Pa. Cmwlth. 2008) involved City ordinances limiting handgun purchases and requiring owners to report lost or stolen firearms. The City argued that Section 6120(a) of the UFA did not preempt the ordinances, because that section preempted only regulations of firearms that were being "carried or transported." *Clarke*, 957 A.2d at 364 (quoting 18 Pa.C.S. § 6120(a)). The City postulated that if the General Assembly had intended to preempt "any and all gun control," it would have done so expressly instead of including limiting language in Section 6120(a). *Clarke*, 957 A.2d at 364. This Court rejected that argument, however, relying on our Supreme Court's broad finding of preemption in *Ortiz v. Commonwealth*, 681 A.2d 152 (Pa. 1996). *Clarke*, 957 A.2d at 364; *see also City of Philadelphia v. Armstrong*, 271 A.3d 555, 562-63 (Pa. Cmwlth. 2022) (again rejecting the City's argument that an ordinance imposing a fine for failure to report a lost or stolen firearm was not preempted by Section 6120(a)).

In *Firearm Owners Against Crime v. City of Pittsburgh*, 276 A.3d 878 (Pa. Cmwlth. 2022) (*en banc*), this Court concluded that Section 6120(a) preempted a Pittsburgh ordinance forbidding the use of assault weapons and high-capacity magazines in public places. The City of Pittsburgh argued that Section 6120(a) facially applied only to "ownership, possession, transfer, or transportation" of firearms, not their use, thus leaving the city with authority to regulate the discharge of firearms in public. *Id.* at 885 (quoting 18 Pa.C.S. § 6120(a) (additional quotation marks omitted)). This Court rejected that argument, relying on the breadth of our Supreme Court's preemption holding in *Ortiz*, as well as our decision in *Clarke*. *Firearm Owners*, 276 A.3d at 888-89. We observed that "[w]hile the [c]ity posits that the actual 'use' of a firearm or ammunition components is not covered under the

CFC - 4

plain language of [S]ection 6120(a) of the UFA, this Court has soundly rejected substantially similar, textually based arguments in *Clarke* . . . ." *Id.* at 891. We explained that "[S]ection 6120(a) of the UFA contains a prolific, sweeping, and expansive force of preemption and the cases strongly suggest that an ordinance will be preempted so long as it touches upon or relates to the field of firearm regulation 'in any manner.'" *Id.* at 890 (quoting 18 Pa.C.S. § 6120(a)). Of particular significance here, we noted that "there is no palpable distinction between lawful and unlawful firearms, *or their accessories and/or components*, for purposes of [S]ection 6120(a) of the UFA." *Id.* at 890 (emphasis added).

> As this Court has previously explained,
>
>> While we understand the terrible problems gun violence poses for the [C]ity and sympathize with its efforts to use its police powers to create a safe environment for its citizens, these practical considerations do not alter the clear preemption imposed by the legislature, nor our Supreme Court's validation of the legislature's power to so act.

*Clarke*, 957 A.2d at 365. I believe we are constrained to hold that the City's ordinance here, like those at issue in the cases cited above, is preempted by Section 6120(a) of the UFA. The City's argument to the contrary is the same kind of "textually based argument[]" we rejected in *Clarke*, *Armstrong*, and *Firearm Owners*. Having already rejected such limitation arguments in relation to Section 6120(a)'s provisions regarding "ownership, possession, transfer or transportation" and "when carried or transported," this Court must likewise reject a textually based argument seeking to limit the meaning of "firearms, ammunition or ammunition components" in Section 6120(a). 18 Pa.C.S. § 6120(a). This is particularly so in light of this Court's express reference to "firearms, or their . . . components" as subject to preemption by Section 6120(a) in *Firearm Owners*. 276 A.3d at 890.

For these reasons, I respectfully dissent from the majority's conclusion on this issue and would hold instead that Section 6120(a) preempts the City's ordinance at issue.

## II. Federal Licensing Requirement

Gun Owners assert that the ordinance is illusory in purportedly allowing a federally licensed person to make guns using parts made with 3D printers. In my view, contrary to the majority's conclusion, Gun Owners' briefing of this issue, while somewhat cursory, was sufficient to allow meaningful review.

Gun Owners pointed out that the relevant federal licensing statute requires a license for one "engaged in the business" of manufacturing firearms, *i.e.*, "a person who devotes time, attention, and labor to manufacturing firearms as a regular course of trade or business with the principal objective of livelihood and profit through the sale or distribution of the firearms manufactured." 18 U.S.C. § 921(a)(21)(A). Thus, there is no federal provision for licensing individuals who make firearms for personal use. According to Gun Owners, this means the ordinance actually imposes a blanket ban that effectively precludes all ownership, possession, transfer, and transportation of "ghost guns" in Pennsylvania, in derogation of the UFA. Gun Owners' Br. at 34.

This argument was straightforward and did not require additional detailed discussion in Gun Owners' brief. In my opinion, Gun Owners explained their position on this issue sufficiently to allow meaningful review. Therefore, it would have been appropriate to reach this issue rather than finding waiver.[2]

---

[2] I note, however, that relevant federal law concerning the manufacture and sale of ghost guns is currently in flux. Effective in August 2022, the Bureau of Alcohol, Tobacco, Firearms and

CFC - 6

### III. Gun Owners' Constitutional Challenge

Gun Owners' appeal also raises the issue of whether the City can limit to commercial manufacturers the making of firearms created on 3D printers, without violating the Pennsylvania Constitution or the UFA. Gun Owners posit that the Pennsylvania Constitution is as broad or broader than the similar right provided by the Second Amendment to the United States Constitution. Pointing to a long tradition of gun making in Pennsylvania, Gun Owners suggest that despite unspecified recent changes in federal law regarding commercial sale of unfinished firearms,[3] "the right to obtain components and firearm parts and to make a firearm for personal use (the activity the [o]rdinance prohibits) remains intact under both state and federal law." Gun Owners' Br. at 23-24. As with the federal licensing issue, I would find that Gun Owners sufficiently developed this issue in their brief to avoid waiver.

As this Court explained in *Firearm Owners*, our Supreme Court relied on the Pennsylvania Constitution in finding preemption of the field by Section 6120(a) in *Ortiz*:

---

Explosives (ATF) issued an amended regulation adding a definition of a "privately made firearm" in an attempt to halt the manufacture and sale of so-called "buy build shoot" kits sold online for private assembly without background checks or serial numbers. *See US* [*S*]*upreme* [*C*]*ourt blocks 'ghost gun' makers again from selling at-home kits*[;] *Justices reverse federal judge's order that allowed manufacturers to sell unregulated kits that convert into firearms,* REUTERS (Oct. 16, 2023), https://www.theguardian.com/us-news/2023/oct/16/us-supreme-court-ghost-gun-ban-firearms-texas-manufacturers?ref=upstract.com (last visited Feb. 15, 2024); 27 C.F.R. § 447.11; 27 C.F.R. § 478.11. The regulation is the subject of a legal challenge in the United States Court of Appeals for the Fifth Circuit, and a federal district court's order purporting to vacate the ATF's rule has been stayed pending final disposition of the case, including any disposition by the United States Supreme Court. *Garland v. Vanderstock*, No. 23A82 (U.S. Aug. 8, 2023); *see also US* [*S*]*upreme* [*C*]*ourt blocks 'ghost gun' makers*, *supra*.

[3] This is possibly an oblique reference to federal efforts at controlling ghost guns, as discussed in the previous footnote.

Citing article [IX], section 2 of the Constitution of Pennsylvania, P[A]. C[ONST]. art. IX, §2 ("A municipality which has a home rule charter may exercise any power or perform any function not denied by this Constitution, by its home rule charter or by the General Assembly at any time"), and article [I], section 21 of the Constitution of Pennsylvania, P[A]. C[ONST]. art. I, § 21 ("The right of the citizens to bear arms in defense of themselves and the State shall not be questioned[.]"), the Court concluded that [S]ection 6120(a) of the UFA trumped the cities' ordinances. In so holding, the Supreme Court explained:

> [T]he General Assembly has denied all municipalities the power to regulate the ownership, possession, [and] transfer of firearms . . . . Thus, regulation of firearms is a matter of concern in all of Pennsylvania, not merely in Philadelphia and Pittsburgh, and *the General Assembly, not city councils, is the proper forum for the imposition of such regulation*.

*Firearm Owners*, 276 A.3d at 886 (quoting *Ortiz*, 681 A.2d at 154-56 (emphasis added)). The issue here is whether component parts of firearms may be locally regulated without running afoul of the Pennsylvania Constitution, where firearms themselves may not be so regulated. Gun Owners' brief squarely addresses the issue.

The City argues that *Commonwealth v. Edmunds*, 586 A.2d 887, 895 (Pa. 1991), requires every litigant asserting a constitutional challenge to brief certain mandatory factors, including the text of the constitutional provision at issue, its history, related policy considerations, and case law from other jurisdictions. City's Br. at 26 (citing *Edmunds*). However, from my review of *Edmunds*, our Supreme Court's discussion of the general briefing requirements focused on the need for a brief sufficient to allow a reviewing court to engage in a robust constitutional analysis; it did not necessarily impose a bright line requirement for the precise contents of every brief. *See Edmunds*, 586 A.2d at 895. Here, Gun Owners'

constitutional argument, like their federal licensing argument, is straightforward. In my opinion, Gun Owners explained their position and briefed this issue sufficiently to allow meaningful review by this Court. Accordingly, I believe it would have been appropriate to reach this issue, too, rather than finding waiver.

## IV. Conclusion

For the foregoing reasons, I respectfully dissent in part.


_____
CHRISTINE FIZZANO CANNON, Judge


Judges McCullough and Covey join in this concurring and dissenting opinion.